## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL COMPLAINT |
| v. : | |
| : | Mag. No. 09-3529 |
| HAJRUDIN PEJCINOVIC, a/k/a "Rudy," : | |
| and : | |
| ADIS RADONCIC, a/k/a "Ari," | |

I, Richard N. Orr, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent of the Federal Bureau of Investigation and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof

RICHARD N. ORR, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
\_\_\_, 2009, in the District of New Jersey

HON. MARK FALK
United States Magistrate Judge

## ATTACHMENT A

From in or around May 2008 through the present, in Atlantic County, in the District of New Jersey, and elsewhere, the defendants

HAJRUDIN PEJCINOVIC, a/k/a "Rudy," and
ADIS RADONCIC, a/k/a "Ari,"

did knowingly and intentionally conspire and agree with each other and with others to distribute and possess with the intent to distribute:

a. five kilograms or more of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

b. a quantity of 3,4 Methylenedioxymethamphetamine, that is "ecstasy," a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and

c. a quantity of Oxycodone, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

All in violation of Title 21, United States Code, Section 846.

## ATTACHMENT B

I, Richard N. Orr, a Special Agent with the Federal Bureau of Investigation, having conducted an investigation into the information described below, have knowledge of the following facts:

1. During the course of this investigation, an undercover federal law enforcement officer ("UC1") has posed as an individual involved in a variety of illegal activities, including drug distribution, selling stolen and contraband cigarettes, and counterfeit goods.

2. On or about May 14, 2008, UC1 met with HAJRUDIN PEJCINOVIC, a/k/a "Rudy," ("PEJCINOVIC") in New York City. UC1 recorded a conversation with PEJCINOVIC and UC1 discussed importing ecstasy from the Netherlands. UC1 stated that for $200,000, UC1 could guarantee that a shipping container would get in to the United States.

3. On or about July 2, 2008, UC1 recorded a meeting with PEJCINOVIC and another individual ("individual#1") at a location in Brooklyn. All three discussed smuggling ecstasy from the Netherlands into the United States.

4. On or about July 23, 2008, UC1 recorded another meeting with PEJCINOVIC and individual #1 at a location in Brooklyn. UC1 and PEJCINOVIC further discussed smuggling from Europe to the United States as well as money laundering. UC1 gave PEJCINOVIC a piece of paper with information about exporting items from the Netherlands to the United States. Later, PEJCINOVIC explained that his cousin was a large-scale cocaine dealer and that PEJCINVOIC was interested in obtaining cocaine from UC1 for his cousin.

5. On or about the evening of August 20-21, 2008, UC1 met with PEJCINOVIC, individual #1 and others inside an apartment in Atlantic City, New Jersey. The meeting was consensually recorded on Closed Circuit Television ("CCTV") and audio. PEJCINOVIC and UC1 discussed the smuggling of a large quantity of cocaine into the United States.

6. On or about August 25, 2008, UC1 recorded a meeting with PEJCINOVIC and individual #1 in Brooklyn. All three individuals discussed various scenarios which involved UC1 acquiring ecstasy from PEJCINOVIC and PEJCINOVIC and his cousin acquiring cocaine from UC1. They discussed having UC1's Colombian drug associates "front" the cocaine for PEJCINOVIC and his cousin, exchanging cocaine for ecstasy, and finding investors for the drug deals. PEJCINOVIC also discussed an upcoming trip to the Netherlands to arrange for the shipment of ecstasy and stated that he would talk to his brother there about a possible ecstasy deal.

7. On or about September 24, 2008, UC1 recorded a meeting with PEJCINOVIC, individual #1 and others in Brooklyn. PEJCINOVIC requested that UC1 travel to the Netherlands in order to meet with PEJCINOVIC's brother and another supplier who can supply large quantities ecstasy. PEJCINOVIC advised that he would obtain samples of the pills.

1

PEJCINOVIC inquired if UC1's associate could immediately supply 5-10 kilograms of cocaine to one of PEJCINOVIC's associates immediately. PEJCINOVIC and UC1 also discussed trading ecstasy for cocaine and the possibility of moving cocaine to Europe.

8. On or about October 30, 2008, UC1 recorded a meeting with PEJCINOVIC, individual #1 and a second undercover law enforcement officer ("UC2") in Brooklyn. When UC2 left the table, UC1, PEJCINOVIC, and indivudal #1 discussed ecstasy and cocaine trafficking. PEJCINOVIC advised that ecstasy with the brand stamp "Mitsubishi" was available for 75 cents per pill.

9. Prior to November 20, 2008, UC1 gave PEJCINOVIC an address where PEJCINOVIC's ecstasy supplier could mail samples to UC1.

10. On or about November 20, 2008, UC1 received a package at an undercover mail address in New Jersey. The package came international mail with a return address in France. The package contained one pulverized blue tablet wrapped in a sanitary napkin. This is the same address UC1 gave to PEJCINOVIC for mailing of the ecstasy sample. DEA analysis found no controlled substance in the pulverized tablet.

11. Also on or about November 20, 008, UC1, UC2, PEJCINOVIC, defendant ADIS RADONCIC, a/k/a "Ari," ("RADONCIC"), individual #1 and another person met at the apartment in Atlantic City. The meeting was recorded on CCTV and audio. During this meeting, UC1, PEJCINOVIC, RADONCIC and individual #1 discussed an upcoming trip to Florida to meet with cocaine suppliers. They also discussed bringing ecstasy into the United States from the Netherlands. PEJCINOVIC also stated that he had a friend visiting from Canada who smuggles pills.

12. On or about December 10, 2008, UC1, UC2, PEJCINOVIC and individual #1 met in Hollywood, Florida. During this meeting, they discussed the shipment of ecstasy from the Netherlands and Canada. They also made arrangements for the shipment of cocaine into the United States and discussed price, time and location of the shipments, as well as PEJICNOVIC's cousin's interest in the cocaine.

13. On or about December 16, 2008, UC1 received another package a the undercover mail address in New Jersey. The package was from France. Inside were three blue tablets of suspected ecstasy.

14. On or about December 23, 2008, UC1, PEJCINOVIC, RADONCIC, and individual #1 met at the apartment in Atlantic City. They discussed the arrangements for the shipment of cocaine as well as ecstasy and oxycontin pills from Canada. PEJCINOVIC and RADONCIC gave UC1 a bag containing almost $400,000 cash as partial payment for the cocaine UC1 and UC2 were to deliver to PEJCINOVIC. PEJCINOVIC stated that the money was from his cousin.

15. On or about December 30, 2008, UC1 and UC2 met with PEJCINOVIC in Brooklyn. They discussed ecstasy and cocaine trafficking as well as PEJCINOVIC's cousin's activities. At one point, PEJCINOVIC took out a shopping bag from a closet and gave it to UC2. The bag contained approximately 17,000 pills of suspected ecstasy. PEJCINOVIC stated that the pills came from Canada.

16. On or about February 19, 2009, UC1, UC2, RADONCIC and another individual ("individual #2") met in Atlantic City. RADONCIC, individual #2 and UC1 discussed ecstasy pills which RADONCIC and PEJCINOVIC were to give to UC1 as additional payment for the pending shipment of cocaine. UC1 asked RADONCIC and individual #2 if they were the ones who would be bringing the pills to Florida (to be given to UC1's cocaine suppliers). UC1, RADONCIC and individual #2 discussed logistics for bringing the ecstasy pills to Florida.

17. On or about March 4, 2009, UC1 met with PEJCINOVIC at the apartment in Atlantic City. The meeting was recorded on CCTV and audio tape. UC1 and PEJCINOVIC discussed the pending arrival of approximately 200 kilograms of cocaine. PEJCINOVIC then gave UC1 approximately 2,000 pills which PEJCINOVIC stated were Oxycontin tablets (80 milligrams each) as partial payment for the additional money owed to UC1 for the pending cocaine shipment. Oxycontin is a brand name for the Schedule II prescription painkiller oxycodone. These Oxycontin pills were to serve as partial payment in lieu of the ecstasy pills referenced in paragraph 16 above.

18. Further, during this March 4, 2009 meeting, PEJCINOVIC stated that the 2,000 Oxycontin pills were obtained by RADONCIC in upstate New York. PEJCINOVIC also stated that RADONCIC would be bringing an additional 1,500 Oxycontin pills as further payment for the 200 kilograms of cocaine.